UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER D. FLEURY, JR.,

    Plaintiff,

v.

POLK COUNTY SHERIFF'S OFFICE
ET AL.,

    Defendants.
_____/

Case No. 24-cv-11417

Hon. Sean F. Cox
United States District Court Judge

### OPINION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 16, 20)

Plaintiff Roger Fleury alleges that police officers caused him to be detained in Michigan pending his rendition to Florida to stand trial on trumped-up charges. Fleury says that he was detained in Michigan for several weeks until his Florida charges were dismissed before he was ever rendered to that State. Fleury now seeks to recover from defendants in Florida and Michigan under 42 U.S.C. §§ 1983 and 1985; 18 U.S.C. § 3182; and state law, and the defendants move to dismiss.

The Court dismisses *with* prejudice: (1) Fleury's §§ 1985 and 3182 claims against the Michigan defendants for failure to state a claim; and (2) Fleury's § 1983 claims against the Michigan defendants because they are immune from suit for those claims. And the Court dismisses *without* prejudice: (a) Fleury's federal and state-law claims against the Florida defendants because he failed to properly serve them with process; and (b) Fleury's state-law claims against the Michigan defendants because the Court declines to exercise supplemental jurisdiction over those claims. This opinion and order resolves this action and final judgment shall follow.

1

**FACTUAL BACKGROUND**

Fleury alleges the following facts. On June 7, 2022, a sheriff's deputy in Polk County, Florida, named Sean Jones swore an affidavit before Florida's Tenth Circuit Court. That affidavit alleged that a suspect who went by "roger_dodger616" and "rogerthatmoney42" had sent sexually explicit messages to a police officer posing as a fourteen-year-old girl. (ECF No. 12, PageID.204). The affidavit also alleged that the suspect had stated that he was forty years old and lived in Michigan and had "[s]en[t] a 'selfie-style' image of a white male with long hair and a short beard." (*Id.* at 206 (emphasis omitted)). The affidavit concluded, "After the [officer] received the selfie-style image of the suspect's face during the chat conversation, investigative resources, social media, and out of state driver's license (Michigan) information, was used to identify the suspect as Roger Dennis Fleury, W/M, D.O.B: 01-10-1982." (*Id.* at 207). The affidavit additionally listed Fleury's address in Saint Clair, Michigan.

Deputy Jones's affidavit charged Fleury with five counts of transmitting material harmful to a minor, Fla. Stat. § 847.0138, and one count of using a two-way device to commit a felony in violation of Florida law, *id.* § 934.215. Later on June 7, 2022, Florida's Tenth Circuit Court issued a warrant for Fleury's arrest on those charges. That warrant listed the same Michigan address for Fleury that Jones's affidavit had and was signed by the Polk County sheriff, Grady Judd.

The Polk County Sheriff's Office then contacted the Michigan State Police ("MSP") about Fleury. The Sheriff's Office spoke with MSP trooper Lauren Cetnor, and she in turn reached out to MSP trooper Jeffrey Jerome. Trooper Jerome and other members of MSP's fugitive response team then performed an investigation that led to Fleury's arrest in Michigan.

On June 15, 2022, MSP trooper Joshua Dirkse saw Fleury exit his house in Saint Clair, Michigan. MSP troopers Tyler Dougherty, Joshua Dirkse, and Aaron Locke then arrested Fleury

2

and transported him to the Saint Clair County jail. MSP trooper Austin McKenzie subsequently forwarded Fleury's case to Saint Clair County prosecutors.

At some point after Fleury's arrest, Sheriff Judd issued a press release listing Fleury's name, likeness, and the charges against him. According to Fleury, the Polk County Sheriff's Office frequently releases information about salacious cases to generate revenue, including as cases such as Fleury's that involved child exploitation. Fleury alleges that the Sheriff's Office is not meticulous about the details they release, and that the Office has publicly branded individuals as criminals who were later exonerated.

On June 16, 2022, Trooper Jerome swore an extradition complaint in Michigan's 72nd District Court in Saint Clair County, Michigan. That complaint listed Fleury's Florida charges and stated that Jerome "has probable cause to believe" that Fleury "is a fugitive from justice and has fled from the aforementioned state." (*Id.* at 198). The extradition complaint also listed section 780.12 of the Michigan Compiled Laws, which codifies part of Michigan's Uniform Criminal Extradition Act ("MUCEA"). That Act states in relevant part that magistrates may detain individuals charged with crimes by another State pending a demand for requisition from such State and a rendition warrant from the governor of Michigan.[1] *See* Mich. Comp. Laws Ann. §§ 780.12, 780.14 (West 2007).

Also on June 16, 2022, Fleury was arraigned on Trooper Jerome's extradition complaint and a Michigan magistrate ordered that "[t]he sheriff shall continue to hold [Fleury] until further order of the court." (*Id.* at 232). Like Jerome's extradition complaint, Fleury's detention order

---

[1] "[A] court ruling on a motion to dismiss 'may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.'" *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (emphasis omitted) (quoting *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

3

also listed section 780.12 of the Michigan Compiled Laws. A judicial officer subsequently denied Fleury's motion for bond on July 13, 2022.[2]

During Fleury's detention in Michigan, Florida prosecutors presented his charges to a grand jury. But that grand jury returned a no bill on July 26, 2022,[3] and Fleury's Florida prosecution was dismissed. Michigan prosecutors then filed a *nolle prosequi* in Fleury's extradition proceeding, which was also then dismissed. Fleury was subsequently released from custody in Saint Clair County on July 27, 2022, after having been detained for one day following his arrest and for an additional forty-two after his arraignment on Trooper Jerome's extradition complaint. This *pro se* action followed.[4]

## PROCEDURAL HISTORY

Fleury's names three Florida defendants (the Polk County Sheriff's Office, Sheriff Judd, and Deputy Jones) and six Michigan defendants (MSP Troopers Cetnor, Jerome, Dirkse, Dougherty, Locke, and McKenzie). Fleury also named MSP itself and two Michigan judicial officers as defendants in his initial complaint, he dropped those defendants as parties in an amended complaint.

After Fleury filed his amended complaint and the Court issued summonses for the defendants, Fleury filed proofs that he served the defendant with process. As relevant here, Fleury's proofs of service for the Florida defendants are three delivery receipts for three parcels

---

[2] It is unclear whether the judicial officer that denied Fleury's motion for bond was the same officer that had ordered him detained on Trooper Jerome's extradition complaint.

[3] It is unclear whether Florida prosecutors presented Fleury's case to a grand jury or whether they merely entered a *nolle prosequi*. But the relevant document that Florida prosecutors filed in Fleury's Florida case states, "THE STATE hereby announces a No Bill," so the Court presumes that a Florida grand jury declined to indict Fleury. (ECF No. 12, PageID.221).

[4] Fleury attached copies of relevant documents to his civil complaint in this case, such as Deputy Jones's felony complaint, his Florida arrest warrant, Trooper Jerome's arrest report and extradition complaint, the no-bill in his Florida prosecution, and the *nolle prosequi* in his Michigan extradition proceeding.

that were addressed to "Sean Jones," "Grady Judd," and the "Polk County Sheriffs Office," respectively. (ECF No. 17, PageID.334; ECF No. 18, PageID.336; ECF No. 19, PageID.338). All three receipts state that they were delivered to the same address in Winterhaven, Florida, and all three were signed by someone named "Jackie Smith." (*Id.*). And Smith checked a box labeled "Agent" on all three receipts.[5] (*Id.*).

The Florida defendants filed a pre-answer motion to dismiss alleging, among other things, that that were not properly served with process. The MSP troopers also filed a pre-answer motion to dismiss alleging that they are entitled to qualified immunity, and MSP purports to join that motion. The defendants' motions have been fully briefed and are ripe for review and the Court ordered their submission without a hearing. For the following reasons, the Court grants the defendants' motions in part and denies them in part.

## ANALYSIS

The Court separately addresses Fleury's claims against MSP, the Florida defendants, and the MSP troopers. None of Fleury's claims against the Florida defendants and the MSP troopers survive their motions to dismiss, and no claims against MSP itself are pending in this action.

### I. The Michigan State Police

MSP argues that the Court should dismiss Fleury's claims against it, but Fleury abandoned any such claims when he dropped MSP as a party in his amended complaint. Thus, the Court need not dismiss any claims against MSP.

### II. The Florida Defendants

The Court need not dwell on the nature of Fleury's claims against the Florida defendants because they raise a meritorious defense to all those claims: insufficient service of process.

---

[5] Fleury has not moved to amend his proofs of service. *See* Fed. R. Civ. P. 4(l)(3).

When a defendant challenges a jurisdictional allegation such as service of process, the plaintiff must "support[] the jurisdictional averment[] by competent proof." *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1952); *see also Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 398–99 (6th Cir. 2021) (explaining that service of process establishes personal jurisdiction). And the Federal Rules of Civil Procedure ("FRCP") permit defendants to challenge service of process via a pre-answer motion to dismiss. *See* Fed. R. Civ. P. 12(b)(5). Because the Florida defendants challenge Fleury's jurisdictional allegations in that way, he must prove that this Court has jurisdiction.

Here, Fleury fails to prove that he validly served the Florida defendants, and therefore he fails to prove that this Court has personal jurisdiction over them.[6] Fleury did not validly serve Sheriff Judd and Deputy Jones unless he served them by a method prescribed by the FRCP, Florida law, or Michigan law. *See* Fed. R. Civ. P. 4(e)(1) (addressing service of process on individuals). And Fleury did not validly serve the Polk County Sheriff's Office unless he served it by a method prescribed by the FRCP or Florida law. Fed. R. Civ. P. (j)(2) (addressing service of process on state-created entities). Stated differently, Fleury may rely on the FRCP or Florida law to prove service on all three Florida defendants and may additionally rely on Michigan law to prove service on Sheriff Judd and Deputy Jones. But Fleury's proofs show only that he attempted service on the Florida defendants' agent, Jackie Smith, by causing process to be delivered to her by certified mail. That's not good enough to prove service on any of the Florida defendants.

---

[6] Fleury's proofs do *not* show that the Florida defendants waived service of process, and Fleury does not seek leave to amend his jurisdictional allegations or supplement his proofs of service.

### A. Service Under Florida Law

Fleury cannot rely on Florida law to prove that he served any of the Florida defendants because Florida law provides that process "shall be served by the sheriff or by a 'special process server appointed by the sheriff.'" *Ojelade v. Coleman*, 258 F. App'x 257, 258 (11th Cir. 2007) (per curiam) (quoting Fla. Stat. § 48.021 (n.d.)). Delivery of process by the U.S. Postal Service, as Fleury caused to be done here, does not qualify as valid service under Florida law. *See id.*

### B. Service Under the FRCP

The FRCP also do not help Fleury prove that he served the Florida defendants. The FRCP permit service on individuals by "*delivering*" process "to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C) (emphasis added). But this Court has adopted the majority rule that "[d]elivery [under the FRCP] means personal service on the appropriate individual, not service by mail." *Shelton v. Credit Corp Solutions Inc.*, No. 23-cv-13314, 2024 WL 2724159, at *1 (E.D. Mich. May 28, 2024) (collecting cases). Here, Fleury alleges that he served Sheriff Judd and Deputy Jones by mail.

The FRCP also permit service on individuals by "leaving" process "at the individual's dwelling or usual place of abode." Fed. R. Civ. P. 4(e)(2)(B). But Fleury mailed process for all three Florida defendants to the same address, so the Court infers that he did *not* mail process to Sheriff Judd's or Deputy Jones's homes. Consequently, Fleury did not validly serve Sheriff Judd or Deputy Jones by a method prescribed by the FRCP.

As for the Polk County Sheriff's Office, the FRCP permits service on state-created entities by delivering process to their "chief executive officer." Fed. R. Civ. P. 4(j)(2). But Sheriff Judd, not Jackie Smith, is the Sheriff's Office's chief executive officer. As such, Fleury also did not validly serve the Sheriff's Office by a method prescribed by the FRCP.

7

That Fleury did not validly serve the Sheriff's Office under Florida law or the FRCP means that he did not validly serve the Sheriff's Office at all. But Fleury may still rely on Michigan law to prove service on Sheriff Judd and Deputy Jones.

### C. Service Under Michigan Law

Fleury did not validly serve Sheriff Judd or Deputy Jones under Michigan law. Michigan law permits service on individual defendants outside Michigan by "*serving*" process "on an agent authorized by written appointment or by law to receive service of process." Mich. R. Civ. P. 2.105(I)(1) (2024) (emphasis added). But like the FRCP, the Michigan Rules of Civil Procedure distinguish *serving* process from *sending* process. The Michigan Rules only ever refer to *sending* process in the context of "sending a summons and a copy of the complaint be registered mail." *Id.* r. 2.105(A)(2), (B)(1)(b), (4)(b), (C)(2), (D)(2), (4), (E)(2), (G)(8), (H)(2). *Serving* process, on the other hand, refers to "personal service." *Bullington v. Corbell*, 809 N.W.2d 657, 662 (Mich. Ct. App. 2011). Because Fleury mailed process to Sheriff Judd and Deputy Jones, he did not validly serve them under Michigan law.

In sum, Fleury fails to prove that he validly served the Florida defendants under the FRCP or Florida law. Fleury likewise fails to prove that he validly served Sheriff Judd and Deputy Jones under Michigan law. And Fleury does not seek leave to amend his pleadings or his proofs of service. Consequently, the Court lacks personal jurisdiction over the Florida defendants and shall dismiss Fleury's claims against them.[7]

The Florida defendants ask the Court to dismiss Fleury's claims against them with prejudice, but they do not explain why Fleury's failure to serve them with process warrants such a harsh sanction. *See Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) ("[U]nder

---

[7] The Court need not address the Florida defendants alternative grounds for dismissal.

8

Rule 41(b), dismissals for lack of personal jurisdiction should be without prejudice."). Thus, the Court shall dismiss Fleury's claims against the Florida defendants *without* prejudice.

## III. The MSP Troopers

Fleury cites a grab-bag of federal statues, constitutional provisions, and common-law terms of art in his complaint. The Court presumes that Fleury attempts to plead claims under 42 U.S.C. § 1985 and 18 U.S.C. § 3182.[8] The Court also presumes that Fleury attempts to plead Fourth Amendment, due-process, and equal-protection claims under 42 U.S.C. § 1983.[9] And the Court presumes that Fleury attempts to plead state-law claims for malicious prosecution, false imprisonment, and defamation.[10] Fleury does not identify the defendants against whom he asserts these claims, so the Court presumes that he attempts to plead them against all six MSP troopers.

The MSP troopers move to dismiss Fleury's claims against them under Federal Rule of Civil Procedure 12(b)(6). To survive that motion, Fleury's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And Fleury's "claim[s] ha[ve] facial plausibility [if he] pleads factual content that allows the court to draw the reasonable inference that the [MSP troopers] [are] liable for the misconduct alleged." *Id.*

---

[8] Fleury explicitly cites these statues as the basis for this Court's jurisdiction.
[9] Fleury's complaint includes the language "4th Amendment unreasonable seizure," "5th Amendment due process violation," and "14th Amendment equal protection violation." (ECF No. 12, PageID.188). Because the MSP troopers are state actors, the Fourteenth Amendment's Due Process Clause, and not the Fifth Amendment's, applied to them. But the Court liberally construes Fleury's due process claim as arising under the Fourteenth Amendment.
[10] Fleury's complaint states that he asserts claims for "Unreasonable Seizure Pursuant to Legal Process, Malicious Prosecution, Wrongful Arrest, False Imprisonment, Defamation of Character, Slander, and Libel." (ECF No. 12, PageID.189).

9

### A. Fleury's §§ 1985 and 3182 Claims

Fleury's attempt to plead claims under §§ 1985 and 3182 fail. Start with § 1985. That statute contains three subsections, each of which create separate causes of action. Subsection (1) "prohibits conspiracies to interfere with federal officers in the performance of their duties." *Courser v. Allard*, 969 F.3d 604, 618 (6th Cir. 2020) (quoting *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)). And subsections (2) and (3) prohibit conspiracies to deprive individuals of their rights based on "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th Cir. 2005). Here, Fleury does not allege that the MSP troopers interfered with any federal officers or that they discriminated against him based on his race or membership in any other class. Thus, Fleury fails to plead any § 1985 claims against the MSP troopers.

As for Fleury's § 3182, claims, that statute merely implements the Extradition Clause, which requires States to "deliver[] up" individuals charged with crimes in another State upon demand of the charging State's governor. U.S. Const. art. IV, § 2, cl. 2. But the statute does not expressly create a private cause of action. Even if such a cause of action could be implied, only a State whose extradition demand was refused by another State would ostensibly have standing to recover. Thus, Fleury also does not plead any legally viable claims under § 3182.

### B. Fleury's § 1983 Claims

Fleury's attempt to plead claims under § 1983 fairs somewhat better but is still insufficient to survive a motion to dismiss. To prevail on a § 1983 claim, a plaintiff must prove two things: (1) "that a defendant acted under color of state law"; and (2) "that the defendant's

10

conduct deprived the plaintiff of rights secured under federal law."[11] *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012). The MSP troopers do not dispute that Fleury pleads the first element, but they do dispute whether he pleads the second. And Fleury attempts to plead that the MSP troopers violated his rights secured by the Equal Protection and Due Process Clauses as well as the Fourth Amendment.

The MSP troopers argue that they are entitled to qualified immunity from these claims. "Qualified immunity is an affirmative defense that protects public officials, in certain circumstances, from [suit] for civil damages when they violate a person's constitutional rights." *Barton v. Neeley*, 114 F.4th 581, 587 (6th Cir. 2024). Courts "ask two questions to determine whether a public official is entitled to qualified immunity: (1) whether the facts alleged support a violation of the plaintiff's constitutional rights, and (2) if they do, whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 587–88.

### i. Equal Protection Claim

The MSP troopers are immune from suit for Fleury's equal-protection claim. "The Equal Protection Clause prohibits 'governmental discrimination that either (1) burdens a fundamental right, (2) targets a suspect class, or (3) intentionally treats one differently from others similarly situated without any rational basis for the difference.'" *Fouts v. Warren City Council*, 97 F.4th 459, 470 (6th Cir. 2024) (quoting *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 527 (6th Cir. 2023)). Fleury does not allege any facts showing that the MSP troopers treated him differently than anyone else, so his equal-protection claim fails under the first prong of the qualified-immunity analysis.

---

[11] To the extent that Fleury attempts to plead a claim under § 1983 for the deprivation of some right conferred by § 3182, that attempt fails for lack of standing.

### ii. Due Process Claim

The MSP troopers are also immune from suit for Fleury's due-process claim. Fleury alleges that he was arrested for the purpose of prosecuting him on charges that lacked probable cause, and that he was subsequently detained for several weeks without probable cause. In other words, Fleury challenges a pretrial detention. But the Fourth Amendment, and not the Due Process Clause, "governs a claim for unlawful pretrial detention." *Manuel v. City of Joliet*, 580 U.S. 357, 369 (2017). Thus, Fleury's due-process claim also fails the first prong of the qualified-immunity test.

### iii. Fourth Amendment Claim

Like Fleury's other § 1983 claims, the MSP troopers are immune from suit for Fleury's Fourth Amendment claims as well.[12] The Fourth Amendment prohibits unreasonable seizures, *see* U.S. Const. amend. IV, and "the general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause." *Dunaway v. New York*, 442 U.S. 200, 213 (1979). A probable-cause determination by a judicial officer embodied in an arrest warrant generally justifies seizing a person until trial unless the judicial officer lacked "a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). And a probable-cause determination by a police officer *without* a warrant generally justifies seizing a person until a probable-cause determination can be made by a judicial officer, *see Gerstein v. Pugh*, 420 U.S. 103, 111–16 (1975), unless the police officer's probable-cause determination

---

[12] The MSP troopers (and Fleury himself at times) analogize Fleury's Fourth Amendment claim to the constitutional torts of false arrest and malicious prosecution. Those torts provide a framework for attributing unreasonable seizures to state officials under § 1983. *See Sykes v. Anderson*, 625 F.3d 294, 305–17 (6th Cir. 2010). The Court need not examine the elements of those torts in detail where, as here, the defendant is entitled to qualified immunity for unreasonably seizing the plaintiff even if the plaintiff's seizure was unreasonable and attributable to the defendant.

cannot survive the same level of scrutiny that courts apply to judicial officers' probable-cause determinations, *Whiteley v. Warden*, 401 U.S. 560, 564–69 (1971).

Here, Fleury alleges that the Florida and Michigan defendants "conspire[d] to violate [his] clearly established constitutional right to be free from unreasonable seizure." (ECF No. 12, PageID.193). Thus, Fleury attempts to plead that the MSP troopers conspired with the Florida defendants to violate his Fourth Amendment rights. But Fleury's "factual allegations of a conspiracy are no more specific than other allegations [that courts] have deemed insufficient." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011). Given Fleury's *pro se* status, the Court shall liberally construe his pleadings and examine whether he nonetheless pleads a Fourth Amendment claim against the MSP troopers under a theory of direct liability.

Under a liberal construction of Fleury's complaint, he alleges that his arrest and detention were an unreasonable seizure, that the MSP troopers caused that seizure, and that the MSP troopers relied on his Florida warrant in doing so. And Fleury contends that his seizure was constitutionally unreasonable for two reasons. *First*, Fleury argues that the MSP troopers seized him without probable cause. But Fleury admits that the MSP trooper relied on his Florida aerrest warrant, and police officers may reasonably assume that probable cause exists to seize a person named in an arrest warrant unless the warrant was supported by "an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Leon*, 468 U.S. 897, 923 (1984) (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)); *see also Messerschmidt v. Millender*, 565 U.S. 535, 546 n.1 (2012) ("'[T]he same standard of objective reasonableness that [the Supreme Court] applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an

officer' who obtained or relied on an allegedly invalid warrant." (quoting *Malley v. Briggs*, 475 U.S. 335, 344 (1986)).

Fleury argues that Deputy Jones's affidavit satisfies this test because it "contain[ed] glaring omissions with regard to standard policy and procedure used by similar government agencies to identify and apprehend suspects in computer sex crime investigations." (ECF No. 12, PageID.189). Thus, Fleury does *not* argue that no reasonable officer could have concluded that *someone* committed a crime based on Jones's felony complaint; he argues only that Jones's affidavit did not reasonably show that *he was that someone*.

Fleury fails to substantiate that legal conclusion. The pleadings show that Deputy Jones's affidavit stated that a suspect whose name, age, State of residence, and physical appearance matched Fleury's had committed a crime. Fleury identifies no precedent showing that similar allegations lack probable cause as a matter of law. *See White v. Pauly*, 580 U.S. 73, 79 (2017) (reiterating that "the clearly established law must be 'particularized' to the facts of the case" to overcome qualified immunity (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, even if the MSP troopers lacked probable cause to seize Fleury, he fails to show that the MSP troopers could not have reasonably concluded otherwise.

*Second*, Fleury claims that his post-arrest detention was unreasonable because Trooper Jerome's affidavit did not comply with the MUCEA. Thus, Fleury effectively argues that even if probable cause existed to seize him, his post-arrest detention was still unreasonable because it violated state law. But Fleury identifies no precedent holding that a failure to comply with state extradition law violates the Fourth Amendment, and Supreme Court precedent points in the other direction. *See Virginia v. Moore*, 553 U.S. 164, 168 (2008) ("We are aware of no historical indication that those who ratified the Fourth Amendment understood it as a redundant guarantee

14

of whatever limits on search and seizure legislatures might have enacted."). As such, even if the MSP troopers violated Fleury's Fourth Amendment rights by causing his post-arrest detention in violation of the MUCEA, Fleury fails to show that a reasonable officer in the MSP troopers' position would *not* have caused Fleury's post-arrest detention for that reason.

At bottom, the MSP troopers are immune from suit for violating Fleury's Fourth Amendment rights because he fails to satisfy the second prong of the qualified-immunity test with respect to his Fourth Amendment claims.

### C. State-Law Claims

Fleury also attempts to plead several state-law claims against the MSP troopers. Because Fleury does not allege that this Court has diversity jurisdiction over those claims, the Court declines to exercise supplemental jurisdiction over them and shall dismiss them without prejudice. *See* 28 U.S.C. § 1367(c)(3).

### CONCLUSION & ORDER

Fleury fails to prove his jurisdictional allegations in the face of the Florida defendants' challenge to those allegations, but the Florida defendants fail to explain why Fleury should be sanctioned for that failure. Accordingly, **IT IS ORDERED** that the Florida defendants' motion to dismiss (ECF No. 20) is **GRANTED** to the extent that it seeks dismissal of Fleury's claims against them **without prejudice** and is **DENIED** in all other respects.

Fleury fails to plead any claims against the MSP troopers under §§ 1985 and 3182; Fleury fails to plead that the MSP troopers are not entitled to qualified immunity with respect to his § 1983 claims against them; the Court declines supplemental jurisdiction over Fleury's state-law claims against the MSP troopers; and no claims against MSP itself are pending in this action. Accordingly, **IT IS ORDERED** that the MSP troopers' motion to dismiss (ECF No. 16) is **GRANTED** to the extent that it seeks dismissal of Fleury's federal claims against them **with**

15

**prejudice** and the dismissal of Fleury's state-law claims against them **without prejudice**. That motion is **DENIED** in all other respects.

    **IT IS SO ORDERED.**

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated:  November 26, 2024